**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
UNITED STATES OF AMERICA                        *
                                                *
                                                *
v.                                              *        Criminal No. 98-127 (SEC)
                                                *
PUERTO RICO ELECTRIC POWER                      *
AUTHORITY                                       *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

**RESPONSE OF DEFENDANT PUERTO RICO ELECTRIC POWER AUTHORITY**
**TO MOTION OF THE UNITED STATES OF AMERICA**
**TO MODIFY AND EXTEND CONDITIONS OF PROBATION**

COMES NOW, Defendant the Puerto Rico Electric Power Authority ("PREPA"), by

and through its undersigned counsel Duane Morris LLP, and respectfully responds to the

Motion of the United States to Modify and Extend PREPA's conditions of probation as

follows:

1. **Introduction**

The Puerto Rico Environmental Quality Board ("EQB") seeks to enlarge the amount

of money PREPA must provide to EQB to fund the air monitoring station project pursuant to

Paragraph 7 of the Settlement Agreement governing PREPA's conditions of probation. As a

condition of its probation, PREPA must provide up to $420,000 to EQB "to fund the purchase

of up to 14 air monitoring stations." However, in addition to money to fund the purchase of

air monitoring stations, EQB has now requested additional money to be paid by PREPA for

operating EQB's air monitoring stations. The United States and PREPA, as well as

representatives of the community, have agreed that a total of five air monitoring stations is the appropriate number required to adequately monitor the air in the vicinity of PREPA's thermo-electric power generating plants. However, EQB's request for additional funds, taken together with the amount of money PREPA has paid, and will pay, for funding the purchase of the air monitoring stations, will exceed the $420,000 funding requirement by more than $250,000. PREPA has not agreed, and does not have the legal authority to agree, to pay money to EQB beyond what is required by PREPA's conditions of probation.

Not only is PREPA opposed to the modification requested by the United States by way of its Motion to Modify and Extend, but PREPA is not authorized by its enabling act to consent to the requested modification. See Title 22 Laws of Puerto Rico Annotated § 196. Negotiations among the parties accordingly have not succeeded in producing an agreement that could be presented to the Court. PREPA is in favor of a program which provides EQB with appropriate resources to adequately monitor the air in communities in the vicinity of PREPA's power plants, and to this end, PREPA has attempted to work in good faith with the United States, EQB, and the community to provide whatever resources PREPA may offer as permitted by law, including already going above and beyond the mere funding required as a condition of PREPA's probation.

As of the date of the filing of this response, the Visible Emissions Compliance Auditor ("the VECA") has now completed the requisite 18 months of visible emissions readings without any notices of Air Probation Violations by DOJ. Additionally, PREPA has now otherwise substantially satisfied all other conditions of probation, as set forth in detail below. Indeed, the only probation condition remaining to be satisfied is for PREPA to continue combusting low-sulfur fuel at its Palo Seco and San Juan facilities through March 14, 2005,

and PREPA has already committed to the United States Department of Justice and the Environmental Protection Agency that it will continue this low-sulfur fuel program through July 2009 in an action supervised by the Honorable Carmen C. Cerezo.

Accordingly, by way of this response, and based on PREPA's substantial compliance with, and satisfaction of, all outstanding conditions of its probation, PREPA respectfully requests that:

(1) The Court note PREPA's objection to the requested modification and extension of PREPA's conditions of probation for any amount of funding in excess of $420,000. In the event the Court entertains the government's request, PREPA respectfully requests that the Court evaluate EQB's request (which appears to be for an additional approximately $250,000) to determine whether the request is reasonable and justified under the circumstances. In all events, should the Court enter the modification requested by the government, PREPA further respectfully requests that the Court determine a specific amount PREPA must pay to EQB and deem that the condition of PREPA's probation related to the air monitoring station project be satisfied upon payment of such sum. And,

(2) The Court terminate the VECA project, and determine that PREPA's remaining conditions of probation have been satisfied, and otherwise release PREPA from the supervision of the United States Probation Office, but still subject to the jurisdiction of this Court until PREPA certifies to this Court that it has combusted fuel with a sulfur content not to exceed 0.50% by weight at its Palo Seco and San Juan power generation facilities for two years, which certification will occur on or about March 14, 2005.

PREPA and its employees have worked diligently to accomplish many important environmental milestones during its period of probationary supervision. The VECA project

3

has proceeded for the requisite 18 months without notice of an Air Probation Violation. PREPA has substantially satisfied and completed all conditions of its probation other than the requirement that it combust 0.50% sulfur fuel at its Palo Seco and San Juan power generation facilities for two years, which requirement would still be supervised by this Court. On these bases, PREPA respectfully requests that this Court recognize PREPA's accomplishments and commitments and terminate the VECA project and release PREPA from the supervision of the United States Probation Office, retaining jurisdiction over PREPA until such time as PREPA certifies satisfaction of the 0.50% sulfur fuel requirement.

**2.    EQB's Request for Additional Funding for Operational Expenses**

As reported by the United States in its Motion, under the Settlement Agreement governing PREPA's conditions of probation, PREPA is required to "fund the purchase of, in an amount up to but not exceeding one hundred eighty thousand dollars ($180,000), up to six monitoring stations for the Puerto Rico Environmental Quality Board." See Settlement Agreement, ¶ 7. However, by way of this Court's Amended Order of Probation entered on July 24, 2002, the Court approved the parties' agreement to increase the number of air monitoring stations from up to six to up to fourteen, holding: "The Parties have also agreed, and the Court accepts that the number of monitoring stations shall be increased from six to fourteen." See July 24, 2004 Order at p. 2.

Although the number of monitoring stations was increased by the Court from "up to six" to "up to fourteen," the Court did not make a corresponding modification to the "in an amount up to but not exceeding $180,000" limit on the air monitoring station project. However, on July 17, 2002, the day prior to the hearing before this Court in which the Court approved the Settlement Agreement, the parties agreed to increase the number of air

4

monitoring stations from "up to six" to "up to fourteen," and to increase the amount to be expended from in an amount up to but not exceeding $180,000 to in an amount up to but not exceeding $420,000, which agreement was communicated to the Court at the time the parties reported the agreement to increase the number of stations to "up to fourteen." While the monetary limit of $180,000 was not changed in the Court's July 24, 2002 Order, it is PREPA's position that it was the intention of the parties to limit expenditures to $420,000. To this end, PREPA has always consistently reported, by way of numerous Quarterly Reports and in other filings with the Court, that the amount of funding for the air monitoring station project indeed increased from up to $180,000 to up to $420,000.

As reported in PREPA's Fourteenth Quarterly Probation Report, filed on October 21, 2003, shortly after PREPA's extended term of probation began, in August 2002, PREPA deposited $420,000 into internal account number 1-930-90-988-80 for funding of the air monitoring station project. Since that time, this $420,000 has been continuously available to EQB for the funding of the air monitoring station project.

Further, PREPA reported in its Sixteenth Quarterly Probation Report and its Motion for Court Approval of Property Transfer for Air Monitoring Stations filed with the Court on March 4, 2004 and approved by the Court on March 5, 2004, that PREPA has taken action beyond that required by its conditions of probation with regard to the air monitoring station project. After initial delays in EQB's use of the funds provided by PREPA, EQB communicated to PREPA that the air monitoring station project would proceed more rapidly if, rather than just funding the purchase of equipment, PREPA would itself procure the equipment and then donate the equipment to EQB. Thereafter, in an attempt to facilitate commencement of air monitoring by EQB, PREPA obliged this request by purchasing

5

equipment at a cost of approximately $202,000 and transferring such equipment to EQB

pursuant to the Court's approval of such transfer. See Motion for Court Approval, attached

hereto as Exhibit A. Although PREPA was not required by its conditions of probation to do

more than provide funding for the project, EQB and PREPA reached the conclusion that the

air monitoring stations could be erected in a shorter time if PREPA itself purchased

equipment specified by EQB, rather than simply supplying EQB with money to purchase the

equipment. See Exhibit A, at ¶ 4. This initial $202,000 of equipment, together with some

equipment already owned by EQB, provided three air monitoring stations to EQB, and

represented all equipment requested by EQB as of July 2004. Approximately $218,000

remains in account number 1-930-90-988-80 for funding of the air monitoring station project.

However, in early August 2004, representatives of EQB requested that, in addition to

funding the purchase of air monitoring stations, PREPA provide funding for operation of the

stations in an amount beyond the $420,000 required by PREPA's conditions of probation. At

a meeting on August 4, 2004, the parties, the community and EQB all agreed that a total of

five air monitoring stations would suffice. PREPA also agreed in principle to switching

funding from equipment purchasing expenses to operational expenses, but could not agree to

pay more than the $420,000 required by PREPA's conditions of probation, as PREPA is not

authorized to do so by PREPA's enabling act, Title 22 Laws of Puerto Rico Annotated § 196.[1]

Because PREPA's obligation under its conditions of probation is limited to $420,000

in funding for the air monitoring station project, PREPA must object to EQB's request for

---

[1]      PREPA's enabling act, Title 22 Laws of Puerto Rico Annotated, does not expressly or impliedly
authorize PREPA to donate or transfer funds or property of value to other governmental agencies. This
interpretation has been expressed by the Puerto Rico Secretary of Justice in Opinion No. 29 of 1963 concerning
the donation of funds to the Red Cross. Moreover, various trust agreements and covenants entered into by
PREPA pursuant to the powers vested in PREPA in its enabling act do not authorize PREPA to donate or
transfer funds or property of value to other governmental agencies.

6

funding above and beyond this amount.  PREPA is not opposed to transferring money earmarked for purchasing equipment to money to be used for operational expenses, but PREPA cannot agree to any funding beyond $420,000.  Moreover, the United States' request that PREPA's probation be modified and extended would amount to an unfavorable modification and extension of PREPA's probation, which cannot be imposed absent a showing that PREPA has violated a condition of its probation.  See 18 U.S.C. § 3565 (a)(1); U.S. v. G.C.A., 83 F.Supp. 2d 253, 254 (D.P.R. 2000).

PREPA of course recognizes the United States' right to request this modification, and while PREPA takes a contrary position, PREPA understands that it is the Court's prerogative to resolve this dispute.  Accordingly, in the event that the Court entertains the government's request, PREPA respectfully submits that the Court satisfy itself that the additional funds requested by EQB are appropriate and justified under the circumstances.  PREPA further requests that any amount of funding which PREPA is ordered to pay be fixed as a certain amount, and that the Court order that PREPA's condition of probation related to the air monitoring station project be satisfied upon PREPA's payment of such fixed amount of funding.

### 3.    **PREPA Has Substantially Satisfied Its Conditions of Probation**

Since this Court Approved the Settlement Agreement on July 24, 2002, PREPA has substantially satisfied its condition of probation, with the only remaining outstanding condition being combustion of 0.50% sulfur fuel at Palo Seco and Costa Sur for two years, which condition will be satisfied on March 14, 2005.  Accordingly, as set forth more fully below, PREPA respectfully requests that the Court remove all conditions of probation other than the low-sulfur fuel requirement.

7

Most importantly, November 5, 2004 marks completion of the 18 month minimum term of the Visible Emission Compliance Auditor ("the VECA").  The VECA project commenced on March 5, 2003, and has proceeded for 18 months as of November 5, 2004 without notice of an Air Probation Violation.

PREPA's satisfaction of its conditions of probation is summarized as follows:

**Conditions Completed:**

a.  **Payment of $10,000 fine**
    (See Settlement Agreement ¶ 3)
    PREPA paid this fine on August 28, 2002 and reported this payment to the Probation Office on October 17, 2002.

b.  **Wastewater Upstream Study and Compliance Plan**
    (See Settlement Agreement, App. B (1))
    PREPA completed this Study and Compliance Plan and submitted same on October 17, 2002.  The Compliance Plan was approved by the United States, which approval was reported to the Probation Office on October 31, 2003.

c.  **Notification of Bond Holders**
    (See Settlement Agreement App. C (2))
    PREPA's Bond Holders were notified in PREPA's 2001-2002 annual report, which notification was reported to the Probation Office on October 31, 2003.

d.  **Land Acquisition Program**
    (See Settlement Agreement App. C (1))
    PREPA completed this Program, which completion was recognized in the Settlement Agreement, at App. C (1).

e.  **Certification of Upgrade of Wastewater Treatment Facilities at Palo Seco**
    (See Settlement Agreement, App. B(4))
    Upgrade certified as complete on October 15, 2002 and reported to Probation Office on October 17, 2002.

f.  **VECA Project**
    (See Settlement Agreement, App. A)
    Project commenced on May 5, 2003, as reported on July 31, 2003.
    This project reached its 18 month anniversary on November 5, 2004 without incident.  PREPA has paid a total of approximately $226,000 for the VECA's services to the Court to date.

g.    **Expanded Distribution of Quarterly Reports to EPA and DOJ**
(See Settlement Agreement, App. C (4))
PREPA has distributed Quarterly Reports as required for each of the eleven
quarterly reports filed since the approval of the Settlement Agreement.

h.    **Report on Use of Fuel Additives**
(See Settlement Agreement, App. C (4))
PREPA has reported on its use of Fuel Additives in each Quarterly Report filed
with the Probation Office since approval of the Settlement Agreement.

i.    **Certification of Utilization of Scrap Metal Storage Facility at Costa Sur
Power Plant**
(See Settlement Agreement, App. B (2))
PREPA has utilized this facility throughout its term of probation and has so
certified in each Quarterly Report submitted to the Probation Office.

**Conditions to Be Completed:**

j.    **Funding of Air Monitoring Station Project**
(See Settlement Agreement, ¶ 7)
In August 2002, PREPA funded account number 1-930-90-988-80 with
$420,000 for the air monitoring station project, and has purchased and
transferred equipment costing approximately $202,000 to EQB to date.
The balance of approximately $218,000 remains available for funding
additional equipment.

k.    **Combustion of 0.50% Sulfur Fuel at Palo Seco and San Juan Facilities**
(See Settlement Agreement, ¶ 5)
PREPA commenced combustion of low-sulfur fuel on March 14, 2003.
Pursuant to ¶ 5 of the Settlement Agreement, this combustion shall continue
through March 14, 2005, as reported to the Probation Office on April 29, 2003.

4.    **PREPA Has Combusted 0.50% Sulfur Fuel for 20 Months and Will Continue
This Program Through March 14, 2005, and PREPA Has Further Committed
to Continuing This Program Through July 2009**

Pursuant to Paragraph 5 of the Settlement Agreement, PREPA is required to combust

fuel with a sulfur content not to exceed 0.50% at its Palo Seco and San Juan facilities for not

less than two years.  As noted above, PREPA has combusted this low sulfur fuel since March

14, 2003 and has so certified to the United States Probation Office.  Importantly, under the

terms of an Amended Consent Decree being supervised by the Honorable Carmen C. Cerezo

in the action captioned *United States and Comunidades Unidas Contra La Contaminacion v. PREPA,* No. 93-2527 (CCC), PREPA has committed to the United States Department of Justice, the United States Environmental Protection Agency and to another Court of this District that PREPA will continue to combust this low sulfur fuel until July 2009, more than four years beyond the date required by the terms of PREPA's conditions of probation in this action.

Although PREPA is required by the Amended Consent Decree to continue this low-sulfur fuel program at Palo Seco and Costa Sur for more than four years beyond the two years required as a condition of probation, Paragraph 13 of the Settlement Agreement requires that PREPA's term of probation continue until such time as PREPA has combusted this low sulfur fuel for a two-year period. Accordingly, PREPA respectfully requests that continuation of this low sulfur fuel program remains as PREPA's only condition of probation.

## 5.    PREPA Has Demonstrated Its Commitment to Environmental Compliance

Throughout its term of probation PREPA has demonstrated a commitment to environmental compliance through its deeds as well as its words, as reported in each quarterly report, and as observed by this Court's air quality monitor, the VECA. PREPA has met on a quarterly basis with a representative of the United States Probation Office, and has continuously reported on an informal basis to the United States Department of Justice concerning any unusual events involving environmental compliance. Further, PREPA has resolved an ongoing dispute with the United States Environmental Protection Agency that arose under the civil consent decree in the action supervised by the Honorable Carmen C. Cerezo, *United States and Comunidades Unidas Contra La Contaminacion v. PREPA,* No. 93-2527 (CCC). In connection with the settlement of that action, PREPA has agreed, among

other things: (1) to use fuel with a lower sulfur content at its Costa Sur and Aguirre plants; (2) to combust 0.50% sulfur fuel at Palo Seco through July 18, 2009 and to combust 0.50% fuel at San Juan until the earlier of July 18, 2009 or the issuance of a permit requiring no more than 0.50% sulfur fuel at the San Juan plant, whereupon applicable permit requirements would govern; (3) to implement a NOx reduction strategy involving NOx optimization (adjustments) and, if necessary, physical modifications to achieve agreed-upon thresholds; and (4) to contribute an additional $100,000 into its Land Acquisition Fund. PREPA has consistently and timely met a number of complicated conditions of probation, and has consistently and timely reported these accomplishments to the United States Probation Office. PREPA's commitment to environmental compliance has been, and continues to be, a priority for the Authority and its employees and this commitment has resulted in the successful satisfaction of PREPA's conditions of probation.

6.    **The VECA Project**

Since May 5, 2003, the VECA has performed visible emissions audits of all operating units at PREPA's Palo Seco and Costa Sur power generation facilities. After eighteen months of opacity auditing by the VECA, PREPA is pleased to report that by all accounts, the VECA has thus far satisfactorily fulfilled its duties to the Court, and in doing so has been professional, diligent and timely in all of its duties.

As of October 15, 2004, the VECA has submitted seventeen confidential monthly reports to the United States District Court and to the parties. In the seventeen-month period covered by these reports, the VECA conducted approximately 1650 individual Method 9 readings at the Palo Seco and Costa Sur power generating facilities.

The monthly averages, by plant, of the 30-minute opacity averages as reported by the VECA for the seventeen months through September, 2004 are as follows:

| Month | Palo Seco | Costa Sur |
|-------|-----------|-----------|
| May 2003 | 5.45% | 10.10% |
| June 2003 | 7.56% | 12.31% |
| July 2003 | 5.83% | 10.82% |
| August 2003 | 5.47% | 9.23% |
| Sept. 2003 | 5.54% | 10.21% |
| Oct. 2003 | 7.02% | 14.20% |
| Nov. 2003 | 8.15% | 14.50% |
| Dec. 2003 | 7.98% | 15.57% |
| Jan. 2004 | 8.07% | 14.19% |
| Feb. 2004 | 6.50% | 13.92% |
| March 2004 | 7.73% | 13.33% |
| April 2004 | 7.54% | 13.44% |
| May 2004 | 7.43% | 13.68% |
| June 2004 | 5.77% | 10.71% |
| July 2004 | 6.25% | 11.31% |
| August 2004 | 6.00% | 10.97% |
| September 2004 | 6.47% | 10.28% |
| **17 Month Average:** | **6.75%** | **12.28%** |

During the six months following expiration of the final exemption period at the Costa Sur facility on May 5, 2004, the VECA recorded a total of just six excess emissions events, five of which were below the 23% opacity mark and all of which were below the 27% opacity mark.

Through November 1, 2004, the VECA has submitted invoices totaling $226,699.07, representing services performed through August 30, 2004. These invoices have been approved

by the United States Probation Office and have been paid within 30 days of such approval by PREPA.

Through the completion of these 18 months of VECA readings, DOJ has not notified PREPA or the Court of any Air Probation Violations. Accordingly, and because of the VECA's positive observations of PREPA's compliance with relevant opacity standards demonstrated over the 18-month span of the VECA project through November 5, 2004, PREPA respectfully requests that the VECA project conclude along with the termination of supervision of PREPA by the United States Probation Office.

## 7.    **Conclusion**

In sum, the United States has requested that PREPA's conditions of probation be modified and extended such that PREPA is required to pay an additional approximately $250,000 to fund the operation of the air monitoring stations in addition to funding the purchase of the stations themselves. PREPA is not authorized to voluntarily pay this additional money to EQB, and PREPA objects to this modification of its conditions of probation.

Additionally, PREPA respectfully requests that this Court terminate the VECA Project, remove PREPA from the supervision of the United States Probation Office, recognize that PREPA has satisfied all outstanding conditions of probation other than the requirement that PREPA combust low-sulfur fuel at its Palo Seco and San Juan plants, and retain jurisdiction over PREPA only until such time as PREPA certifies that it has combusted 0.50% sulfur fuel at its Palo Seco and San Juan plants through March 14, 2005.

At San Juan, Puerto Rico this 5th day of November, 2004.

Respectfully submitted,

DUANE MORRIS LLP

By:     Lawrence W. Diamond, Esq.
        John O. Ryan, Esq.
        One Liberty Place
        Philadelphia, PA  19103
        (215) 979-1159

        *Attorneys for Defendant the Puerto Rico*
        *Electric Power Authority*

PH2\826718.1

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of November, 2004, a true and correct copy of

the foregoing Response of Defendant Puerto Rico Electric Power Authority to Motion of the

United States of America to Modify and Extend Conditions of Probation was served via first

class mail, postage prepaid, to counsel for the United States of America, addressed as follows:

Howard P. Stewart, Esquire
Senior Litigation Counsel
Environmental Crimes Section
United States Department of Justice
P.O. Box 23985
Washington, DC  20026-3985

A courtesy copy for informational purposes was also forwarded via Fed Ex to:

Mr. Victor M. Canino
United States Probation Office
United States District Court
District of Puerto Rico
143 Federal Building
150 Chardón Avenue
San Juan, PR  00918-1741

John C. Ryan